S. A. CARRICO et ux., Appellants,

v.

Leonard Clyde BUSBY, Appellee.

No. 13418.

Court of Civil Appeals of Texas.

Houston.

June 4, 1959.

Rehearing Denied June 25, 1959.

**414**

Jim S. Phelps, Houston, for appellants.

F. Warren Hicks, Willard I. Boss, Houston, Hicks, Dollahon, Boss & Wohlt, Houston, of counsel, for appellee.

WERLEIN, Justice.

This suit was brought by S. A. Carrico (who died before trial of the case) and wife, Elsie Lee Carrico, to recover damages for personal injuries sustained by appellant Mrs. Carrico when the automobile in which she was riding, driven by one Miss Bessie Beaulieu, was struck in the rear by a car driven by appellee, Leonard Clyde Busby. The Beaulieu car, which had been standing for a few seconds in line behind several other cars that were stopped on Pease Avenue between La Branch and Austin Streets in obedience to a traffic light, was struck with sufficient violence to cause its rear bumper to hook over the front bumper guard of the Busby car and pull it off. The only damage to the Beaulieu car was a loose screw in the rear bumper.

The case was tried to a jury and the jury found in answer to Special Issues 1 to 7, inclusive, on negligence and proximate cause, that appellee did not fail to keep a proper lookout; that Busby was not following too close to the Beaulieu car; that Busby did not fail to make timely application of his brakes; that the collision was the result of an unavoidable accident. The jury answered "None" to Issues 8, 9 and 10, thereby finding: (1) that appellant sustained no expense for medical bills as a result of the collision, (2) no medical bills would be incurred in the future as a result thereof, and (3) that the amount of money that would reasonably compensate appellant for such injuries and damages as were caused by reason of the accident, including physical pain and mental anguish both past and future, lost earnings, and loss of earning capacity in the future, was "None."

In overruling appellant's motion for new trial, the Trial Court entered an order setting aside the jury's findings to Special Issues Nos. 1 through 7 because against the overwhelming weight and preponderance of the evidence, but refused to set aside the jury's findings as to damages.

Appellant's first nine Points of Error assert that the Trial Court erred in failing to grant a new trial for the reason there is no evidence or insufficient evidence to support the jury's answers to Special Issues 8, 9 and 10, and because the answers thereto are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong. In her 10th, 11th and 12th Points, which we do not consider too general and indefinite for our consideration, appellant makes the same contentions with respect to the jury's answers to all the Issues.

Appellee asserts that the Trial Court's action in setting aside the jury's answers to Issues 1 through 7 was a nullity because appellant did not file a motion to disregard such findings as required by Rule 301, Texas Rules of Civil Procedure. In her motion for new trial, appellant moved the Court to set aside the verdict and judgment rendered against her and grant a new trial, alleging that the Court erred in accepting the verdict and entering judgment based upon the jury's answers to Issues 1, 3, 5 and 7, and also 8, 9 and 10, since there was no evidence or insufficient evidence to support such answers, and the same were against the overwhelming weight and pre-

ponderance of the evidence. The trial judge ordered a hearing upon such motion and the order overruling such motion shows that both parties announced ready at the hearing.

■ We think that appellant's motion substantially complied with Rule 301. The motion pointed out the error of the Court in accepting the answers to the various Issues and also the reasons why the same should be set aside. Hines v. Parks, Tex. Com.App., 128 Tex. 289, 96 S.W.2d 970. Appellant's motion was tantamount to moving the Court to disregard the jury's findings on all the Issues. Appellee made no objection to the form in which the Trial Court's jurisdiction was invoked. Traders & General Ins. Co. v. Heath, Tex.Civ.App., 197 S.W.2d 130, ref. n. r. e.; McDonald, Vol. 4 Texas Civil Practice, p. 1416. Furthermore, appellee has no cross-assignment questioning or attacking the Trial Court's action in setting aside Issues 1 through 7.

■ Whether or not we are wrong in the foregoing conclusions, we are of the opinion, after carefully considering all the evidence, that the findings of the jury to Special Issues Nos. 1 through 7 are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust, and the same should be set aside. King v. King, 150 Tex. 662, 244 S.W.2d 660. Indeed, we are inclined to the view that there is no evidence in the record that warranted submission of such Issues. Appellee drove his car into the rear of the Beaulieu car in broad daylight. There is nothing to account for the collision other than the negligence of appellee in the particulars submitted in said Issues. Appellee admitted that the accident would not have happened had he been watching a little closer, and the undisputed evidence shows he followed the Beaulieu car too closely and failed to make timely application of his brakes. Lubbock Bus Co. v. Pearson, Tex. Civ.App., 266 S.W.2d 439, ref., n. r. e.;

Sullins v. Pace, Tex.Civ.App., 208 S.W.2d 583; Hoey v. Solt, Tex.Civ.App., 236 S.W. 2d 244; Sutherland v. Cotter, Tex.Civ.App., 226 S.W.2d 476.

In order to determine whether the Trial Court erred in refusing to set aside the jury's findings to Special Issues Nos. 8, 9 and 10 and to grant a new trial, it is necessary to review all of the evidence.

Appellant testified that she was sitting on the back seat of the Beaulieu car. They came to an ordinary stop behind cars that had stopped in their lane of traffic. She heard an awful crash and the next thing she knew her head was up just about as far as it could get, and she did not know what happened then until after they were pulled into the first lane at the curb, where they remained parked about five minutes or so after the Busby car left. She had a good bit of pain in her throat and shoulder at the scene of the accident, and had a terrible headache the rest of the day. She stayed on the job at Foley's that day but took Bufferin tablets, and lay down three times during the day. When she went home that night she rubbed turpentine and grease on her neck and throat, and put a big plaster on her shoulder and back and applied a heating pad. When she got up in the morning she had terrible pains in her throat, shoulder, neck and back. Her daughter took her down to Dr. Leiser's office about 9 o'clock in the morning, and he checked her over and X-rayed her shoulders, head, back and chest, and gave her some prescriptions. She saw him three or four times, and he referred her to Dr. Hudgins, an orthopedic doctor, whom she saw several times and who took X-rays of her twice. She could not move her head and was having pain in her left shoulder and the lower part of her back, jaw and neck. She later saw Dr. Hinds, a dental surgeon, two or three times and also Dr. Karney. They made a headgear for her which she wore at home for some three or four months. She had never had anything wrong with her before. Since the accident,

she could not say she had ever been free of pain at any time. She lost a month from work immediately following the accident, and then went back and worked three weeks when she got a two weeks vacation. She was not able to perform her duties as she did before. She quit Foley's voluntarily in May of 1958, and got a lighter job. She lost about $225 during the month she could not work at all, and during the eight days she was off after her vacation she lost about $72, and lost about $400 in commissions.

There was evidence that appellant incurred medical bills in the sum of $549 and X-ray charges in the sum of $55. Dr. Karney testified that future treatment which he planned for her would cost $285.

On cross-examination, appellant testified that she could not say whether her jaw came in contact with some portion of the automobile because she was dazed for several seconds at that time. In her deposition she had testified that her jaw did not do so, but her head was thrown back over the seat; that she was looking straight forward at the time of the collision and did not think she had her mouth open.

Dr. Thomas Frederick Hudgins, Jr., testified that he made a thorough examination of appellant and found no external signs of injury, but that she was extremely tender over the prominent part of her left shoulder blade and the muscles above and below it and had limitation of motion of the left shoulder because of pain, and tenderness of the pieces of bone of the neck vertebra, lower back vertebra and spinous processes; that the neurological examination was negative; that he examined X-rays that had been taken by Kelsey-Leary Clinic of her neck, mid-back or thoracic spine, of her lumbar spine, and of her hips; that he supplemented them with two special views of the neck and took two pictures of her jaw. In his opinion, the patient had an extension-flexion injury of the neck, commonly called whiplash, and a partial tear of a

muscle coming to the shoulder blade and leaving it, which he felt were minimal. He felt she had an internal derangement of the temporomandibular joint or jaw joint on the left and a mild sprain of her low back; that her whiplash injury was minimal to moderate. One of the two of her worst complaints was the fact that she could not open her mouth because of pain and clicking in the left jaw joint "between the bone here and the mandible"; that he could find no evidence of dislocation but there was a distinct click; that the first day he saw the appellant was on April 11, 1957; the next time he saw her was August 14, 1957; that at such time she was continuing to have pain in the left jaw joint and still had pain in the region of her left shoulder blade, and her neck was still bothering her when she turned her head to the right. She said she had lost 40 pounds, and he felt that it had been that much because she had been unable to chew solids well and had subsisted on soft foods and liquids; that her jaw has not improved essentially and that she still has pain on turning her neck to the right, and pain in the region of her left shoulder blade when she lies down on it and some tingling down the inner side of her left arm into the hand and two fingers; that he made an examination "yesterday" (evidently the day before the trial began). He further testified that "her decreased sensation to pin prick conformed exactly to the distribution of the ulnar nerve dermatome or the area of skin supplied by it"; that appellant had evidence of neck injury after the accident; that her jaw bone had several cracks extending across it but there was no displacement of the two pieces of bone; that based upon the history that he got from appellant and his physical examination of her and study of the X-rays, his diagnosis was that there was internal derangement of the left jaw joint, an interference with the ulnar nerve and the structures which it supplies, and that from her history it appeared that it happened in an automobile

accident about three weeks before he saw her; and that as regards her pain in her neck and shoulder he would have expected them to disappear before the time of the trial and still felt optimistic in that they probably would go away; but he could only guess as to what the future would hold with respect to her jaw and ulnar nerve condition; that if there had been an injury to the left jaw bone as a result of an automobile collision he would not necessarily have anticipated some outward evidence of bruise or something to indicate an injury to that portion of the body; that such injury would be unlikely if that portion of the person's body did not come in contact with any portion of the vehicle. When asked whether the condition of the jaw was the result of disease as distinguished from the result of an injury, he testified: "Highly improbable"; that when he had said it could be the result of disease or injury he was unaware that there was a fracture lower down in the jaw bone, which he did not know of until August 20th. He also testified that the condition she has is unusual but that he could find no other cause than the automobile collision in question; that in a great majority of the cases if there was going to be any nerve disturbance it would have shown up before April 11, 1957. He referred her to Dr. Hinds on account of the jaw condition.

Dr. Karney, a doctor of dental surgery, associated with Dr. Hinds, testified that they noted a definite noise on the opening of appellant's left mandibular jaw. There was constant pain in and around and near the eye and ear on the left side of the head. They determined that she had a positive injury in the left temporomandibular joint which is just in front of the ear between the lower jaw and skull—a ball-and-socket type joint. That her front teeth could be separated from an end to end position one-half inch. Dr. Hinds extracted two teeth. Nine were missing prior to the accident. Based on a hypothetical question asked by appellant's counsel, Dr. Karney attributed appellant's condition to the

collision. Dr. Karney first saw appellant about August 20, 1957.

Appellee's witness, Bessie Beaulieu, testified that she would say the collision or impact was a slight bump and would not have considered it a real hard bump but an average bump; that neither she nor the other passenger in the car was injured; that she was completely stopped and her foot was on the brake; that her car did not come in contact with the car immediately ahead of her; that she asked appellant if she wanted to go to the hospital and she said no, that "her back was hurting but she did not want us to take her to the hospital."

Appellee's witness, Mrs. Eloise Chancey, who was in the front seat of the Beaulieu car, testified that they were at a complete standstill, having stopped for a red light with several cars ahead; that the collision came as a complete shock, because they were sitting there, and were bumped from behind; that it happened so fast that really she could not tell just what did take place; that she knew they were bumped and jarred, but she sustained no injuries herself; that the drivers of the Beaulieu and Busby cars both got out and exchanged license numbers; that they asked appellant if she would like them to take her to a doctor and she said, "No, I am all right. Let's go to work"; but that she complained that her neck was hurt; that "we kept saying, 'Let's go by and have her checked' but she said, 'Let's go to work', she was all right, and that she would get in touch with her own doctor."

Mrs. Busby, wife of appellee, testified that neither she nor her niece received any injuries in the collision and that the bump was very slight; that they had plastic seat covers and did not even slide forward on the seats. Appellee testified he was traveling less than five miles per hour when he ran into the Beaulieu car.

Appellee, while admitting that appellant had at some time sustained inju-

ries, contends that the jury was warranted in finding that she sustained no damages as a result of the accident in question. There is nothing in the record, however, that indicates appellant ever sustained injuries in any other accident or at any other time. We think the evidence unmistakably shows that she suffered some injury as a result of the collision in question. The fact that the other occupants of the car were not injured is at most only a circumstance to be considered in determining the severity of the impact. Appellant was 54 years old and was sitting in the back seat. The collision was sudden and as Mrs. Chancey testified "came as a complete shock." It is a matter of common knowledge that a slight jar or impact may result in injury when occurring suddenly and unexpectedly, and that the position of the body, head and limbs and the age of the injured party as well as his or her general physical condition may all have an important bearing on the result.

Appellant's testimony was clear, direct and positive with respect to her injuries and the fact that she had never had anything the matter with her before. We are of the opinion that the complaints made by appellant and the statements made by Miss Beaulieu and Mrs. Chancey immediately after the collision are a part of the res gestae, strongly corroborating appellant's testimony and the fact that she sustained injuries as a result of the accident. It is significant that both of the other occupants of the Beaulieu car were solicitous about appellant and suggested taking her to the hospital or having her checked. Appellant's complaints that her back was hurting and her neck was hurt constituted also declarations as to her bodily condition. McCormick and Ray, Texas Law of Evidence, Sec. 832, p. 605. The positive findings of Dr. Hudgins of neck and shoulder injury some three weeks after the collision also corroborate appellant's testimony. Moreover, the rule permitting a court to discard the testimony of an interested witness does not authorize a court to believe the opposite of what it imports. Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378, 380.

It is also noteworthy that the jury, while considering of their verdict, sent to the trial judge the following note signed by their foreman:

"Under the law may a jury award compensation to plaintiff for medical fees and mental anguish, after absolving defendant of liability in an action on the ground of its being an unavoidable accident?"

From this we may well surmise that the jury in answering "None" to the damage issues, concluded that having answered the liability issues against appellant, it would be improper to award her any damages. There would have been no point in sending the note had the jury not believed appellant suffered damages as a result of the collision.

We think the uncontroverted evidence shows that appellant suffered pain and sustained lost earnings and some medical expense as a result of the collision in question, and that the jury's findings to Special Issues 8, 9 and 10 are so against the great and overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. King v. King, supra; Dyer v. Sterett, Tex.Civ. App., 248 S.W.2d 234; Tudor v. Tudor, Tex., 314 S.W.2d 793; Rules 451, 453 and 455, T.R.C.P.; Art. 5, Sec. 6, Constitution of Texas, Vernon's Ann.St.

Reversed and remanded.