Evelyn **SCHMELTEKOPF**, Appellant,

v.

**JOHNSON WELL SERVICE OF LULING**, Individually and d/b/a Johnson Oil Well Service, and Frederico Rios, Appellees.

No. 3–90–035–CV.

Court of Appeals of Texas, Austin.

June 12, 1991.

Rehearing Overruled July 17, 1991.

Bob Roberts, Austin, for appellant.

Preston H. Dial, Jr., Groce, Locke & Hebdon, San Antonio, for appellees.

Before CARROLL, C.J., and JONES and SMITH, JJ.

CARROLL, Chief Justice.

Evelyn Schmeltekopf sued Frederico Rios and Johnson Well Service of Luling for injuries she allegedly sustained in an automobile collision. Pursuant to a jury verdict, the trial court rendered a take nothing judgment against Schmeltekopf. She appeals, complaining that the jury's verdict is against the great weight and preponderance of the evidence. We reverse the judgment and remand the cause for a new trial.

## BACKGROUND

The accident in this case occurred one evening in March 1987 when Frederico Rios, an employee of Johnson Well Service of Luling, Inc., returned to the company's office after a day in the field. Rios was driving a pickup truck which belonged to Johnson and was pulling an empty trailer normally used to transport pipes. As Rios pulled the truck into Johnson's driveway, he realized that a chain blocked the entrance to the storage area. Rios stopped the truck at the chain, leaving the trailer in the roadway. While Rios was attempting to remove the chain, Evelyn Schmeltekopf's passenger car, which was travelling approximately 45 m.p.h., collided with the trailer, rotating the trailer almost 90 degrees from the back of the truck. Schmeltekopf's car was damaged, and Schmeltekopf later developed medical problems.

Schmeltekopf sued Johnson and Rios, asserting Rios' negligence caused the accident. After a three day trial, the court submitted four broad form questions to the jury. The jury found Schmeltekopf and Rios each had acted negligently, and that the negligence of both had caused the acci-

dent. The jury attributed 85% of the responsibility for the accident to Rios and 15% to Schmeltekopf. However, the jury failed to award Schmeltekopf any damages.

The trial court gave the jury a supplemental instruction directing them to continue their deliberations in an attempt to resolve the apparent conflict between their answers to the liability and damage questions. After the jury returned without changing their responses, the trial court entered a take nothing judgment against Schmeltekopf.

## CONTENTIONS ON APPEAL

Schmeltekopf brings four points of error. We will address only the first, in which she asserts that the jury's failure to find any damages resulting from the accident is against the great weight and preponderance of the evidence. Rios and Johnson concede that Schmeltekopf's car collided with Rios' trailer, and that Schmeltekopf suffered from physical ailments which manifested themselves shortly after the accident. They argue however that Schmeltekopf failed to establish by a preponderance of the evidence that the accident was the proximate cause of her injuries.

## THE EVIDENCE

We begin our analysis with a review of the evidence regarding Schmeltekopf's injury. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

### 1. Evelyn Schmeltekopf's Testimony

Evelyn Schmeltekopf testified about her life before the accident, the aftermath of the accident, and the effect the accident has had on her. Schmeltekopf was 57 years old at the time of the accident.

Before the accident, Schmeltekopf performed general housekeeping duties and cared for her semi-invalid mother, who lived with Schmeltekopf and her husband. Schmeltekopf enjoyed gardening and yard work, as well as canning, freezing, and sewing and other crafts. She went to church and played piano for Sunday school. She had no difficulty performing her duties as a third grade teacher. She taught full-time, was team leader of the third grade reading comprehension program, and played piano for school performances. She also played piano for her own enjoyment and planned to teach piano to supplement her income when she retired.

Immediately after the collision, Schmeltekopf did not think she needed medical attention. However, the next morning she felt stiff and sore, so she called Dr. Primer, who prescribed pain medication. Four days after the accident, she consulted Dr. Vineyard, who gave her a neck brace. At this time, Schmeltekopf was experiencing a great deal of pain in her neck and left shoulder. Her left hand trembled and felt cold, and two fingers began to curl under.

At Dr. Vineyard's instruction, Schmeltekopf was hospitalized eleven days after the accident with severe pain in her neck and left shoulder, and numbness in her left arm. She could not move the two afflicted fingers on her left hand. She experienced severe headaches and muscle spasms in her neck. Schmeltekopf was treated in the hospital with traction, pain medication, and physical therapy. She began seeing Dr. Powell while she was in the hospital. Dr. Powell prescribed a hand brace, a "heavier" neck brace, and a device apparently designed to stretch or straighten her spine and neck.

After Schmeltekopf left the hospital, her pain was less acute. She nonetheless continued to experience headaches and pain in her left shoulder, and she could not move the two afflicted fingers. She wore the neck and arm braces and continued with physical therapy. For some time after leaving the hospital, Schmeltekopf could not perform household chores such as sweeping, dusting, and making beds. She could not do gardening, canning, or freezing. It was difficult for her to care for her mother.

Schmeltekopf missed twenty-two days from work because of the accident. When she finally returned, she worked only half days for another one to two weeks. She had difficulty performing her teaching duties. She could not supervise her stu-

dents on the playground because she experienced discomfort when she walked, stood, or moved around. She could not walk her students to the bus area or carry her books. She could not demonstrate computer keyboard technique and experienced pain when she moved around the classroom to instruct individual students. She often dropped things and was embarrassed that others had to pick them up for her. Approximately eighteen months after the accident, she took early retirement from her teaching career. Schmeltekopf retired at least in part because of another injury and a bout of pneumonia.

Since the accident, Schmeltekopf's condition has improved "some." Her fingers are permanently injured. She can lift them only a little and cannot move them in isolation. She continues to experience pain in her neck and shoulders and, if she is fatigued, her head aches. She has constant trembling and pain in her left hand. She suffers pain daily and experiences mental anguish because she cannot teach or play the piano. Her husband must help her dress. She is often frustrated and embarrassed by her condition. None of these problems existed before the accident.

## 2. Testimony of Other Lay Witnesses

Lawrence Schmeltekopf, Evelyn Schmeltekopf's husband, testified that Schmeltekopf was a wonderful wife and partner before the accident. Afterwards, her activity level was reduced, and she no longer played the piano. She could no longer perform household chores and had trouble sleeping. The Schmeltekopfs had to cut a vacation trip short because the higher altitude and the climate bothered Mrs. Schmeltekopf.

Schmeltekopf's son testified that after the accident he observed swelling in his mother's left hand, that two of her fingers began to turn under and were painful to straighten. She complained of pain in her neck and stiffness. Her neck was in traction when she was in the hospital. At home, she wore a neck brace during the day and used a small traction device at night. She was no longer able to play the piano. Her strength decreased and she was unable to do art work. Her ability to perform normal tasks was limited, and she frequently dropped things.

Magdalene Ortunio, the principal of the school where Schmeltekopf taught, testified that Schmeltekopf had no problems performing her job before the accident. After the accident, Schmeltekopf appeared to be in pain, and wore neck and hand braces. Schmeltekopf was not as "spunky," not as enthusiastic. She did not smile as much.

Fellow teacher Betty Brooks testified that Schmeltekopf was an "ideal" teacher before the accident. Afterwards, Brooks saw Schmeltekopf in pain: she rubbed her arm and shoulder and wore neck and arm braces. Schmeltekopf had difficulty teaching because of her impaired mobility. Brooks no longer saw Schmeltekopf at parties.

## 3. Dr. Powell's Testimony

Schmeltekopf introduced the deposition testimony of her treating physician, Dr. Powell, regarding her medical treatment. While Schmeltekopf was in the hospital, Dr. Powell conducted a pain compression test on her neck, which indicated severe weakness. He performed a nerve conduction test and an electromyelograph, which revealed that the nerve roots in Schmeltekopf's neck were weak. Thermography tests confirmed the diagnosis of nerve damage. These results were consistent with the symptoms Schmeltekopf complained of and with the history she gave Dr. Powell regarding the accident.

As to the extent of impairment, Dr. Powell testified that Schmeltekopf can no longer perform the fine movements required for playing the piano or for her work, especially computer instruction. As to the long term, Powell feels that Schmeltekopf is 50% disabled as to fine movements, and there is a possibility of continued pain flare-ups. He believes Schmeltekopf is not trying to exaggerate her condition. Dr. Powell based all of his answers on a "reasonable medical probability." He also tes-

tified that his services were reasonable and necessary.

### 4. Other Evidence

In addition to the testimony outlined above, Schmeltekopf introduced documentary evidence to establish her earning capacity, medical expenses, and other damages. The parties stipulated that the medical expenses were reasonable and necessary.

Rios and Johnson introduced no evidence to controvert the evidence that Schmeltekopf was injured, that the injury resulted from the accident, or that Schmeltekopf suffered damages as a result of the injury.

### DISCUSSION AND HOLDING

■ Schmeltekopf properly challenges the jury's finding of zero damages as being against the great weight and preponderance of the evidence. *See* Gonzales & Gilbreath, *Appellate Review of a Jury's Finding of "Zero Damages,"* 54 Tex.B.J. 418, 420 (1991). In analyzing a great weight and preponderance point, we must consider and weigh all of the evidence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id. See also* Garwood, *The Question of Insufficient Evidence on Appeal,* 30 Tex.L.Rev. 803 (1952).

■ A jury's failure to find a fact need not be supported by any evidence, but the jury may not refuse to find a fact in the face of overwhelming evidence of the existence of the fact. *Russell v. Hankerson,* 771 S.W.2d 650, 653 (Tex.App.1989, writ denied). A jury is not at liberty to disregard evidence that an injury has occurred and to refuse to award damages. *Id. See also Lowery v. Berry,* 153 Tex. 411, 269 S.W.2d 795, 796–97 (1954) ("The answer of the jury that [the plaintiff] suffered no damages is not only unsupported by any evidence, but is directly contrary to all the evidence").

■ Considering all of the evidence in this case, we hold that the jury's failure to award Schmeltekopf damages is against the great weight and preponderance of the evidence. *See Horn v. State Farm Ins. Co.,* 567 S.W.2d 266, 268 (Tex.Civ.App.1978, no writ); *Dupree v. Blackmon,* 481 S.W.2d 216, 219 (Tex.Civ.App.1972, writ ref'd n.r. e.); *Clark v. Brewer,* 471 S.W.2d 639, 642 (Tex.Civ.App.1971, no writ); *Carrico v. Busby,* 325 S.W.2d 413, 418 (Tex.Civ.App. 1959, writ ref'd n.r.e.). The uncontradicted evidence demonstrates that Schmeltekopf suffered an injury as a result of the accident. We must, therefore, set aside the jury's verdict.

*Carrico* is very similar to this case. The plaintiff in *Carrico* was involved in a rear-end automobile collision. Afterwards, she experienced back and neck pain for which she consulted several physicians, all of whom concluded that she had been injured. At trial, the plaintiff offered her own testimony, and that of her physicians and other persons involved in the accident. The trial court entered a take nothing judgment against the plaintiff based on the jury's failure to award her any damages. On appeal, the defendant admitted the plaintiff had sustained injuries, but contended the jury was warranted in finding that her damages did not result from the accident in question.

The court of appeals reversed, holding that the jury's findings were against the great weight and preponderance of the evidence. 325 S.W.2d at 418. In this regard, the court noted that the uncontroverted evidence showed the plaintiff had suffered pain, lost earnings, and incurred medical expenses as a result of the collision. *Id.* Similarly, the uncontroverted evidence in this case shows that Schmeltekopf suffered pain, lost earnings, and incurred medical expenses as a result of the collision. The jury's verdict is, therefore, clearly wrong and manifestly unjust.

Rios and Johnson argue that the jury could reasonably have concluded that Schmeltekopf's injuries were caused by some unidentified source. They rely on a series of cases which uphold denial of recovery to personal injury plaintiffs because the plaintiffs failed to prove causation.

*See Hipp v. J.D. Lowrie Well Service, Inc.,* 800 S.W.2d 668 (Tex.App.1990, Error den.); *Blount v. Earhart,* 657 S.W.2d 898 (Tex. App.1983, no writ); *Jackson v. Killough,* 615 S.W.2d 274 (Tex.Civ.App.1981, no writ); *Hulsey v. Drake,* 457 S.W.2d 453 (Tex.Civ. App.1970, writ ref'd n.r.e.); *Smith v. Safeway Stores, Inc.,* 433 S.W.2d 217 (Tex.Civ. App.1968, writ ref'd n.r.e.).

These cases are distinguishable. In each case, there was either evidence of another possible cause of the injury, or conflicting evidence as to the existence of the injury. It is, of course, within the special province of the jury to reconcile conflicting evidence. In this case, however, there was no evidence of another possible *cause* of Schmeltekopf's injury, and the evidence regarding the *existence* of her injury was uncontradicted.

■ Rios and Johnson try to overcome the uncontradicted evidence with two arguments. First, they assert that the stipulation as to the reasonableness and necessity of Schmeltekopf's medical expenses is not a stipulation that the accident caused the injury. We agree. *See Hulsey,* 457 S.W.2d at 460–61. They then argue that the only evidence as to causation is, therefore, Dr. Powell's testimony that Schmeltekopf's injuries were consistent with her symptoms and with the history she gave him of her accident. We disagree. Rios and Johnson ignore the testimony of Schmeltekopf, her husband, son, and coworkers that Schmeltekopf was not the same after the accident and that she was injured and in pain.

■ Second, Rios and Johnson argue that the jury's finding is supported by "affirmative evidence." In this regard, they point to evidence regarding the severity of the accident: the speed Schmeltekopf was travelling, the effect of the accident on her passenger, the extent of damage to her car, the size of the trailer Rios was towing. They also emphasize that there was no evidence that Schmeltekopf received a blow or whiplash, or was "jostled" in the accident; that the evidence showed she turned down medical attention and could walk immediately after the accident; and that Dr. Powell's assessment of Schmeltekopf's in-

juries was based on the history she gave him. We do not agree that this evidence supports a conclusion that Schmeltekopf did not suffer any injury as a result of this accident. The evidence remains uncontradicted that the accident caused Schmeltekopf injury and pain.

## CONCLUSION

We sustain Schmeltekopf's first point of error, reverse the trial court's judgment, and remand this cause for a new trial. We need not address Schmeltekopf's other points of error. *See* Tex.R.App.P.Ann. 90(a) (Pamph.1990).

Reversed and Remanded.