IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-440-CV





JOHN LECAS,



 APPELLANT


vs.





PAULA LEVERETT,



 APPELLEE





 




FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT



NO. C92-148A, HONORABLE JAMES C. ONION, JUDGE PRESIDING



 





 John Lecas appeals from a take-nothing judgment rendered on the jury's verdict
in his negligence action against Paula Leverett. We will affirm the trial-court judgment.



THE CONTROVERSY


 In January 1990, Lecas was involved in an automobile collision. He sued the other
driver for negligently causing personal injuries that Lecas had received in the collision. Lecas
settled and compromised his claim before trial. In April 1990, Lecas was involved in a second
automobile collision, this time with Leverett. The injuries that Lecas allegedly received in the
second collision are the subject of the present litigation.

 In answer to special questions, the jury determined that Lecas and Leverett were
each fifty percent negligent in operating their automobiles, that such negligence proximately
caused the collision, and that Lecas's damages were zero. The trial court rendered judgment
accordingly, ordering that Lecas take nothing.

 In his appeal to this court, Lecas contends the jury's failure to find Leverett more
than fifty percent negligent and their failure to find any amount of damages are so against the
great weight and preponderance of the evidence as to be manifestly unjust. We will therefore
review the entire record to determine whether the jury's answers are so unjust in light of the
evidence that they cannot stand, having due regard for the jury's collective wisdom, their
opportunity to observe witnesses who testified in person, and our incapacity to weigh the evidence
and find a fact differently. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); William
Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence", 79 Tex.
L. Rev. 515, 525-26 (1991).



REVIEW OF THE EVIDENCE


 Lecas testified he was driving his Bronco between five and ten miles per hour down
an aisle in a pharmacy parking lot. Leverett backed suddenly out of a parking space and
"smashed" into Lecas's Bronco between the driver's door and the left rear-wheel. Although Lecas
did not recall any cars parked on Leverett's left side, blocking his view of her car, he stated he
did not see her car moving before she hit him. He conceded that if he had seen Leverett backing
out he would have been able to stop in time to avoid the collision. The repairs to the Bronco cost
$850 and Lecas displayed to the jury a photograph of the Bronco. (1) 

 Lecas stated he was so sore the day after the accident that he went to Dr. Huey,
complaining his left shoulder hurt. (2) Dr. Huey referred him to Dr. Earle, who also referred him
to other physicians. Lecas made repeated visits to the Pain Clinic for treatment of his neck and
back.

 Lecas described the earlier accident in which another driver ran into the back of
his pickup truck and propelled him down the street. After that accident Lecas had "whiplash neck
and sore neck, sore muscles in my shoulders." Only his neck and right shoulder were injured
after the first collision, not his left shoulder or lumbar spine. He also consulted Dr. Huey after
the first collision. 

 Lecas testified that before the collision with Leverett he had never had any back
problems and was able to work at his Sundowner Lounge. He had served drinks, stocked the
cooler (which involves carrying cases of beer and soft drinks), helped clean up by mopping and
stacking chairs and tables, and done yard and maintenance work. Since the Leverett collision he
has had pain in his back, legs, and waist and has been unable to fish, waterski, perform household
chores, or be on his feet tending bar for any length of time. He had to hire someone to do
yardwork and work at the bar because he is not able to lift or strain in any way. His doctors have
told him he should not bend or lift anything over thirty pounds. 

 On cross-examination, Leverett's counsel confronted Lecas with numerous medical
records that contradicted material aspects of his testimony. Lecas had testified he was in such
intense pain from the Leverett collision that he went to Dr. Huey the day after it occurred, but Dr.
Huey's records revealed he first saw Lecas some three weeks after the collision. Although Lecas
had testified it was only after the second collision, not the first, that he had problems with his left
arm and shoulder and low back, Leverett's attorney pointed out that physical-therapy records from
the month before the Leverett collision reveal Lecas had reported severe pain and injury to his left
side and back after the first collision, that his "butt [was] sore as hell," and he had complaints of
low-back pain. (3) Lecas replied that he did not remember telling anyone he had low-back pain after
the first accident. The same physical-therapy records revealed he kept a number of appointments
after the Leverett collision, but never mentioned its occurrence to anyone at the clinic. 
Additionally, medical records from before the first accident show Lecas had complained of low-back pain and visited a chiropractor. On redirect he stated he went to a chiropractor for aches and
pains and nervous tension. 

 Leverett's counsel also questioned Lecas about a videotape made by a private
investigator shortly before trial. In the tape, Lecas appears at the bar bending, lifting articles, and
moving about actively. Leverett's counsel had asked Lecas if he had visibly displayed pain or
discomfort, and Lecas maintained that he had. On direct, Lecas noted the videotape showed him
sitting down quite a lot and though he was shown carrying a table, it weighed only twenty-two
pounds and he is restricted from lifting thirty pounds. Lecas testified further that after the second
collision he continued to throw darts and to play pool and shuffleboard at the bar. 

 Susan Kee, owner of the pharmacy, testified by deposition that she witnessed the
accident. She saw Leverett back her car out in a normal way, apparently not seeing Lecas's
Bronco approaching. Kee did not see the Bronco until just before the collision, and said Lecas
was driving at average parking lot speed, neither speeding nor creeping along. Kee said Lecas
was driving down a very narrow aisle and that Leverett backed out no more than three feet before
she struck the side of Lecas's truck. Kee described the impact as a bump that did no more damage
than crush Leverett's taillight. From her location inside the pharmacy, Kee could not tell how
badly Lecas's truck was damaged, although it was driveable after the impact. 

 Paula Leverett testified she came out of the pharmacy and got into her car with her
two small children. There were no cars parked to her immediate left that might block her view
of Lecas or his view of her. She looked to her left, saw no one approaching, and began backing
out while looking to her right. She was not going very fast because she was trying to see around
a truck to her right. Her car was a diesel that had to build up speed before it would move fast. 
Leverett did not hear Lecas sound the horn or any screeching of brakes. After the impact she
moved back into the parking space and got out of her car. Lecas got out of his truck and began
shouting at her that he had just sold his truck. He did not complain of any pain. She stated the
taillight of her car was damaged in the accident and the repair bill was apparently over $800. 

 Dr. Stephen Earle, a specialist in orthopaedics and spine surgery, testified by
deposition as follows:

 1.  He examined Lecas approximately two months after the second collision. 

 2.  After reviewing an MRI scan of Lecas's lumbar region he determined Lecas had
a ruptured disc that had occurred six to nine months previously, (4) as well as a torn cartilage in his
left shoulder joint. 

 3.  In his opinion, the first collision caused a herniated disc in Lecas's neck while
the second collision caused the problem in Lecas's left shoulder and a herniated disc in his lumbar
spine. 

 4.  Based on Lecas's injuries from the second collision, the following movements
would cause Lecas pain: rotating the left arm or raising it above the head; stretching, prolonged
standing, squatting, bending, or twisting; and picking things up. Earle agreed with Leverett's
counsel that washing dishes is the type of movement that would cause such pain. 

 Dr. Robert Hardy, a board certified neurosurgeon, testified by videotape, the other
hand, as follows: 

 1.  He had studied the medical records, x-rays, and MRI films regarding Lecas's
injuries

 2.  Emergency-room records pertaining to the first collision indicated that Lecas
complained then of pain in his neck, right shoulder and lower back. 

 3.  Dr. Earle's treatment records revealed that Lecas had a congenital abnormality
that would have caused back problems even if the second collision had never occurred.

 4.  The physical-therapy records recorded that Lecas had reported left shoulder pain
as well as right shoulder pain after the first collision. (5) 

 5.  Dr. Earle had referred Lecas to Dr. Swann whose records indicated that Lecas
had a herniated disc in the lumbar spine. Dr. Partain (Dr. Swann's associate) recorded, however,
that Lecas's performance of a straight-leg-raising test showed unrestricted movement indicating
the absence of any ruptured disc. 

 6.  In Hardy's opinion, based on the foregoing and the nature of the collision with
Leverett, Lecas could only have sustained mild uncomplicated strains that would have healed in
a few days, and his current complaints were unrelated to that collision; indeed, Hardy did not see
how that collision could have caused any neurological problem in the lumbar area.

 Lecas's wife, Geraldine, testified that before her husband was injured he would
"work the bar" at the Sundowner Lounge, but now they have hired someone to work the bar. She
also stated she has to help him slip his shirts over his head when he is dressing and he can no
longer go fishing. 

 David Palmer, a private investigator, testified that he observed Lecas on several
occasions during the month before the trial. He surreptitiously filmed Lecas one evening for a
total of one hour between 8:30 and 10:30 p.m. at the Sundowner Lounge. He made the film into
a videotape that was shown to the jury. He narrated some of the videotape, pointing out that
Lecas walked around the bar quite a bit, carried a table about fifty feet, and moved several chairs
around the table. (6) He testified further that he stayed at the Sundowner Lounge observing Lecas
until 2:30 a.m. and that Lecas helped clear and wipe tables, tended bar several times, and never
exhibited signs of physical discomfort. 



DAMAGES


 Lecas bore the burden of proving he had sustained compensable injuries in the
collision with Leverett. Texas & Pacific Ry. v. Van Zandt, 317 S.W.2d 528, 530 (Tex. 1958);
Hulsey v. Drake, 457 S.W.2d 453, 459 (Tex. Civ. App.--Austin 1970, writ ref'd n.r.e.). By
answering "zero" to the damages question, the jury failed to find Lecas carried this burden. When
considering great-weight points complaining of a jury's failure to find, we are mindful that the
jury were not convinced by a preponderance of the evidence. Herbert v. Herbert, 754 S.W.2d
141, 144 (Tex. 1988). We may not set aside the jury's failure to find merely because the evidence
favors an affirmative answer, but only if the great weight of that evidence dictates an affirmative
answer. Id. 

 Lecas argues the evidence clearly and overwhelmingly established that he suffered
injury in the collision with Leverett. See Schmeltekoph v. Johnson Well Serv., 810 S.W.2d 865,
869 (Tex. App.--Austin 1991, no writ) (noting jury's failure to find a fact need not be supported
by any evidence but jury may not refuse to find a fact in face of overwhelming evidence of its
existence). In Schmeltekoph, we held that the jury's failure to find the plaintiff was damaged was
against the great weight and preponderance of the evidence because evidence regarding the
existence of her injury was uncontradicted and there was no evidence of another possible cause
of injury. Id. at 869-70; see also Hammett v. Zimmerman, 804 S.W.2d 663, 664 (Tex. App.--Fort
Worth 1991, no writ) (noting if evidence of objective injury is uncontroverted jury's failure to
find past injury is against great weight and preponderance of the evidence); Russell v. Hankerson,
771 S.W.2d 650, 652 (Tex. App.--Corpus Christi 1989, no writ) (stating if plaintiff presents
unrefuted evidence of objective symptoms of injury jury may not disregard and fail to find
damages). 

 When there is conflicting evidence, however, the jury may choose to believe one
witness and disbelieve others or resolve inconsistencies in their testimony. Ethicon, Inc. v.
Martinez, 835 S.W.2d 826, 834 (Tex. App.--Austin 1992, writ denied). As trier of fact, the jury
is the sole judge of the witnesses' credibility and the weight to be attached to their testimony. Id. 
We may not pass upon the credibility of witnesses and substitute our judgment for that of the jury
simply because some of the evidence would support a different conclusion. Allied Towing Serv.
v. Mitchell, 833 S.W.2d 577, 582-83 (Tex. App.--Dallas 1992, no writ). Unlike Schmeltekoph,
the record in the present case reveals a good deal of contradictory and conflicting evidence
regarding whether the second collision caused injuries to Lecas's left shoulder and lumbar spine. 


 First, there was conflicting medical evidence with respect to the cause of the
injuries to Lecas's left shoulder and lumbar spine. Dr. Earle testified those injuries were caused
by the second collision. Dr. Hardy testified, however, that it was inconceivable that the second
collision could cause a herniated disc in the lumbar spine and, in his opinion, the second collision
could cause only mild strains that would heal within a few days. It is within the province of the
jury to weigh expert opinion testimony and determine which expert witness should be credited. 
Tate v. Sharp, 831 S.W.2d 899, 901 (Tex. App.--Beaumont 1992, no writ); Pilkington v. Kornell,
822 S.W.2d 223, 230 (Tex. App.--Dallas 1991, writ denied). Although there was objective
medical evidence of injury to the lumbar spine in the MRI scan, there was no objective medical
evidence that the cause of such injury was the second collision. See Jackson v. Killough, 615
S.W.2d 274, 275 (Tex. Civ. App.--Dallas 1981, no writ) (stating jury was not bound to accept
medical testimony that injury was consistent with accident when no objective evidence showed
accident was source of injury). The notes made by Dr. Earle, the treating physician, showed that
Lecas had a congenital back condition that could have caused any pain.

 There was also conflicting evidence regarding the collision itself. Although Lecas
testified Leverett "smashed" into his truck, Kee described the impact as a "bump." Both vehicles
traveled at a slow rate of speed, and Leverett's car traveled only three feet from a standstill before
striking Lecas's truck. Photographs indicated that neither vehicle was extensively damaged,
although the repair bill for each was over $800. 

 And, there was evidence of a possible cause of injury other than the second
collision with Leverett's car. Lecas himself testified about the previous severe collision in which
he was rear-ended and propelled down the street. He apparently went to the emergency room
complaining of pain in his neck, right shoulder, and lower back, or so the jury could have
believed from the evidence. Physical-therapy records indicate he described the first collision as
throwing him to the left so that he was hit on his left side. 

 Finally, there were numerous inconsistencies between material portions of Lecas's
testimony and his previous statements as recorded in his medical records. Although Lecas insisted
he had no left shoulder or back problems until the second collision, the physical-therapy records
indicated that Lecas complained of left shoulder and back pain after the first collision and before
the second collision. Other medical records indicated he had reported low-back pain and visited
a chiropractor in that regard before the first collision. Moreover, the investigator's videotape
showed Lecas at the bar engaging in activities, apparently without pain, that were presumably
painful if one credits the testimony of both Lecas and Dr. Earle. 

 Considering all the evidence, we cannot conclude the jury's failure to find Lecas
sustained damages in the collision with Leverett was so contrary to the overwhelming weight of
the evidence as to be clearly wrong and manifestly unjust. See Tatum v. Huddleston, 711 S.W.2d
367, 369 (Tex. App.--Texarkana 1986, no writ) (refusing to overturn jury's failure to find damages
where there is no objective evidence that accident caused injury, plaintiff had previous injuries,
car struck at low rate of speed, and plaintiff testified inconsistently and failed to complain of
injury at time of accident); see also Hyler v. Boytor, 823 S.W.2d 425, 427-28 (Tex.
App.--Houston [1st Dist.] 1992, no writ) (holding jury's failure to find damages not against great
weight of evidence where plaintiff's complaints were largely subjective and objective injuries
mostly attributable to other causes). We overrule Lecas's second point of error.



NEGLIGENCE


 When the jury fail to find the plaintiff sustained damages, their findings on
negligence become immaterial. Tate, 831 S.W.2d at 900. We have, nevertheless, included in our
review of the evidence that part pertaining to the parties' operation of their respective
automobiles. Having considered such evidence, we hold the jury could reasonably find the parties
equally negligent. We refer particularly to their apparent failure to keep a proper lookout, a
matter put in issue by Leverett's answer and one within Lecas's global allegation of negligence
on Leverett's part.

 For the reasons given above, we overrule Lecas's points of error and affirm the
trial-court judgment.



 

 John Powers, Justice

Before Justices Powers, Aboussie and Jones

Affirmed

Filed: April 27, 1994

Do Not Publish

1.   Lecas did not seek to recover for damages to his car, but
for physical pain and mental anguish, loss of earning capacity,
physical impairment, and medical care.
2.   The injury to Lecas's left shoulder should be distinguished
from those Lecas allegedly sustained in the first
collision--injuries to the right shoulder, neck, and a herniated
disc in the cervical spine.
3.   The physical-therapy records note Lecas's account of the
first accident: "rear ended 1/18/90. Hit on left side, threw me to
left. Left side neck/back."
4.   This time period encompasses both the first and second
accidents.
5.   The records dated March 13, 1990, indicate, "Rotators L
side (rot. R) painful, jerky spasms."
6.   We have viewed the videotape, which shows Lecas sitting at
the bar part of the time, walking around, helping wipe tables,
washing dishes, and carrying a table.