Opinion issued April 14, 2005






















In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01342-CV




SHIRLEY HILL CHUMLEY, Appellant

V.

DONALD CHARLES BARHORST, Appellee




On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2002-31508




MEMORANDUM OPINIONThis is an appeal from a take-nothing judgment rendered in favor of appellee,
Donald Charles Barhorst. Appellant, Shirley Hill Chumley, filed a negligence action
for the injuries she sustained as a result of an automobile collision. On appeal, the
issues are (1) whether the evidence is legally and factually sufficient to support the
jury’s findings on liability, damages, and malice (issues one, two, four through seven,
and nine); and (2) whether the trial court abused its discretion in overruling
appellant’s motion for new trial (issues three, eight, and ten). We reverse and
remand. 
BACKGROUND
            On January 19, 2002, Chumley drove along Cypresswood Drive on a clear, dry
afternoon. She stopped at a red traffic light at the corner of the Interstate 45 service
road. After the light turned green, Chumley began to drive through the intersection. 
Barhorst’s vehicle, which was traveling north on the service road, drove through the
red light at this intersection and collided into the side of Chumley’s vehicle. Chumley
was severely injured and knocked unconscious. 
          Chumley sued Barhorst under a negligence theory of liability. The case was
tried before a jury, which found that (1) Barhorst’s negligence, if any, did not
proximately cause the occurrence in question; (2) Chumley was awarded zero
damages for physical pain and mental anguish in the future, lost earning capacity in
the future, physical impairment in the future, and disfigurement in the past and future;
(3) Chumley’s harm did not result from malice; and (4) no exemplary damages should
be assessed against Barhorst. The trial court entered a take-nothing judgment in favor
of Barhorst on October 10, 2003. Chumley moved for a new trial, but the trial court
denied her motion. 
DISCUSSION
          In issue two, Chumley contends the evidence is factually insufficient to support
the jury’s failure to find that Barhorst was a proximate cause of the occurrence in
question. 
          To prevail on a negligence claim, Chumley was required to prove all three of
the following: (1) Barhorst owed a legal duty; (2) he breached that duty; and (3) the
breach proximately caused her injuries. Van Horn v. Chambers, 970 S.W.2d 542, 544
(Tex. 1998); Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 635 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied). Proximate cause requires that the
negligent act or omission was (1) a cause-in-fact of the injury, i.e., a substantial factor
in bringing about the injury and without which it would not have occurred, and (2)
foreseeable, i.e., a person of ordinary intelligence should have anticipated the danger
created by the negligent act or omission. Doe v. Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d 472, 477-78 (Tex. 1995). 
Sufficiency of Evidence
          Because Chumley challenges the sufficiency of the evidence related to several
of the jury’s liability and damages findings, we begin by setting out the applicable
standard of review for such a challenge. Chumley attacks the factual sufficiency of
an adverse jury finding on which she has the burden of proof. In reviewing a claim
that the verdict is against the great weight and preponderance of the evidence, we
consider and weigh all of the evidence, and may set aside the verdict only if the
finding is so against the great weight and preponderance of the evidence that it is
clearly wrong and unjust. Vickery v. Vickery, 999 S.W.2d 342, 376 (Tex. 1999); Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).
            A court of appeals may reverse and remand a case for new trial if it concludes
that the jury’s “failure to find” is against the great weight and preponderance of the
evidence. Cropper v. Caterpillar Tractor Co., 754 S.W.2d 646, 651 (Tex. 1998). A
court of appeals must detail the evidence relevant to the issue in consideration, 
clearly state why the jury’s finding is factually insufficient or so against the great
weight and preponderance of the evidence as to be manifestly unjust, and state in
what regard the contrary evidence greatly outweighs the evidence in support of the
verdict. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001); Ames v. Ames,
776 S.W.2d 154, 159 (Tex. 1989). An appellate court cannot substitute its opinion
for that of the trier of fact and determine that it would reach a different conclusion. 
Glockzin v. Rhea, 760 S.W.2d 665, 666 (Tex. App.—Houston [1st Dist.] 1988, writ
denied). 
          We begin by reviewing the factual sufficiency of the evidence. For evidence
supporting the jury’s failure to find Barhorst’s negligence, if any, a proximate cause
of Chumley’s injuries, Barhorst relies on his own testimony and that of his wife, Mrs.
Barhorst. Barhorst had driven approximately one million miles in his life and had
never been involved in a traffic accident before January 19, 2002. The day of the
accident, Barhorst felt awake, alert, and in complete control of his mental and
physical faculties. Barhorst testified that he did not have any problems controlling
his vehicle and did not feel any impairments until he admittedly “blacked out” going
down the exit ramp just before the accident. Mrs. Barhorst testified that she had
never before observed her husband lose consciousness like he did on this occasion,
except for a grand-mal seizure Barhorst had in the middle of the night “back in the
seventies,” at least twenty years prior to the incident in question.


 Barhorst testified
that, since the grand-mal seizure, he had been taking medication. The medication he
was taking at the time of the accident, Tegatral XR, never made him feel like he was
limited in what he could do. Moreover, he testified he did not feel he was putting
anyone at risk by driving on the day of the accident. However, this testimony, which
supports the jury’s finding that Barhorst was not a proximate cause of Chumley’s
injuries, is weak. Therefore, we must examine the entire record to determine if the
evidence against the fact finder’s determination is so great as to make this
determination manifestly unjust. Raw Hide Oil & Gas, Inc. v. Maxus Exploration
Co., 766 S.W.2d 264, 276 (Tex. App.—Amarillo 1988, writ denied). 
          To support her position that, contrary to the jury’s finding, Barhorst was a
proximate cause of Chumley’s injuries, Chumley points to the testimony of Mr. and
Mrs. Barhorst, Officer L. Anders, and eyewitness Elizabeth Galindo. The jury may
believe one witness and disbelieve another, and it may resolve inconsistencies in any
testimony. Eberle v. Adams, 73 S.W.3d 322, 327 (Tex. App.—Houston [1st Dist.]
2001, pet. denied). 
          Prior to the accident, Elizabeth Galindo was driving in the left lane traveling
eastbound on Cypresswood, next to Chumley’s vehicle. Galindo estimated that
Barhorst’s vehicle was traveling at a rate of speed of approximately 40 to 45 miles per
hour. Galindo testified that Chumley entered the intersection when Chumley’s light
was green. Galindo witnessed Barhorst’s vehicle approaching Chumley’s vehicle and
saw it collide with Chumley’s vehicle after Chumley went through the intersection. 
          Officer Anders, a police officer assigned to the accident investigation division
of the Harris County Sheriff’s Department, investigated the accident involving
Chumley and Barhorst. Anders testified that, based on the information he gathered
at the scene of the accident, Barhorst was responsible for the accident. Based on his
investigation, Anders testified that Barhorst’s vehicle drove through a red traffic
light, which caused him to collide with Chumley’s vehicle. Anders did not find any
skid marks on Barhorst’s vehicle, and concluded from this fact that Barhorst did not
brake before the collision. 
          Mrs. Barhorst, a passenger in her husband’s vehicle, also testified at trial
regarding the accident. She testified that she assumed her husband’s traffic light at
the intersection was red because the vehicles in front of her husband’s vehicle were
all stopped. She also stated that she did not deny that her husband “ran the red light
and crashed into Shirley Chumley’s car.” Mrs. Barhorst saw her husband’s hands and
legs become rigid prior to the accident.
          Barhorst discussed blacking out and losing consciousness. Barhorst testified
that, besides the grand-mal seizure in the mid 1970s, he had never lost consciousness
before the accident in question, but that he had experienced periodic feelings of light-headedness where he felt like he was falling asleep. Barhorst explained, “[W]hen I
was at home, I periodically--and this is every two or three, four, five months, don’t
know because it was not repetitive, I would have this light-headedness or gray area.” 
During these episodes, which would last four or five seconds, his hands would
become “a little slow in reacting [sic] what you want to do.” He would experience
dizziness, which would sometimes occur after driving; blurry vision during which
things would slide out of focus; loss of control over his hands; and difficulty moving
his arms. Dr. Randolph Evans, a neurologist that Barhorst saw after the accident,
recorded Barhorst’s description of these episodes by stating Barhorst “believes he has
a seizure about once every couple of months.” 
          At trial, Barhorst did not deny that he ran the red light at the intersection at
which the accident occurred, but he claimed he does not remember doing so because
he lost consciousness. Contrary to his deposition testimony that indicated he told
someone two days after the accident that his foot was on the accelerator, Barhorst
testified, “If I was in a blacked-out condition at the time, I may have had my foot on
the accelerator as stated here.” During his direct examination, Barhorst testified to
the following regarding the foreseeability of the accident: 
[Counsel]:   Okay. So given the history of seizures, light-headedness, it was foreseeable that you could
have one of these episodes at any time,
including on January 19, 2002. Correct?
[Barhorst]:   As I review it, yes. Went back over it, yes. 
[Counsel]:   In fact, you said as you look back over it, Mr.
Barhorst, it actually occurred to you before
that you could have one of these seizures,
light-headedness episodes while you were
driving. True?
[Barhorst]:   Looking back over it, thinking back over it,
yes. 
[Counsel]:   I’m sorry. I didn’t make my question clear. 
Even before January 19 of 2002, it had
occurred to you that this could happen to you,
didn’t it? Right?
[Barhorst]:   Yes.
[Counsel]:   And if you were driving, unlike working in
the yard or doing something else, you would
not have the opportunity to stop or sit down
and let it pass. Right?
[Barhorst]:   Thinking back over it, yes, you are right. 
[Counsel]:   And it would certainly not be a safe thing for
you to drive while you were going through
one of these episodes. True?
[Barhorst]:   Probably not. 
 
. . . 
 
[Counsel]:   Knowing that you drove anyway and caused
this terrible car wreck on January 19, 2002?
[Barhorst]:   I was driving on January 19, 2002, yes.
[Counsel]:   Now, you were taking medication to stop or
help you with the seizures, were you not?
[Barhorst]:   Yes.
[Counsel]:   And, in fact, it was medication called
Tegatral?
[Barhorst]:   Tegatral XR.
[Counsel]:   That is a -- specifically, that is a seizure
medication. Correct?
[Barhorst]:   Yes. 
[Counsel]:   And it also has, I believe you experienced
side effects of drowsiness, double vision,
dizziness when you take teg trawl [sic]?
[Barhorst]:   If you take too much Tegatral, you get the
double vision.
[Counsel]:   That is the medicine that you were taking that
day. Correct?
[Barhorst]:   Yes. 
 
On cross-examination, Barhorst admitted that, prior to the accident, he had thought
about the possibility of having an episode of light-headedness while he was driving.


 
Barhorst also went on to testify that the accident was his fault.
[Counsel]:   Now, obviously you know now it wasn’t safe
to enter the intersection of Cypresswood and
I-45 service road when you did that, right?
[Barhorst]:   Yes.
[Counsel]:   And you also know beyond any doubt that
this crash was your fault. True?
[Barhorst]:   Yes.
[Counsel]:   And no one else’s fault but yours?
[Barhorst]:   No one else’s fault. 

In response to the question of whether he knew that he should not have been driving
on the day of the accident given his medical history, Barhorst answered, “Looking
back, yes, I should not have been driving.” Barhorst acknowledged that, given his
condition, he should not have been driving: 
[Counsel]:   So you should have known on January 19 that
you should not have been driving. True?
[Barhorst]:   Yes.
[Counsel]:   Because if you got a medical condition where
you get blurry vision, lose control, have slow
responses, you could hit or run over
somebody. True?
[Barhorst]:   True.
[Counsel]:   And here that somebody was Shirley
Chumley?
[Barhorst]:   On that date, yes. 
 
          A jury’s failure to find a fact need not be supported by any evidence, but the
jury may not refuse to find a fact in the face of overwhelming evidence of the
existence of the fact. Schmeltekopf v. Johnson Well Serv. of Luling, 810 S.W.2d 865,
869 (Tex. App.—Austin 1991, no writ). Here, however, the jury’s finding is contrary
to the overwhelming weight and preponderance of the evidence, including testimony
by the defendant, the defendant’s wife, the plaintiff, and an eyewitness that he ran a
red stop light at which other cars had stopped. See Bay, Inc. v. Ramos, 139 S.W.3d
322, 329-30 (Tex. App.—San Antonio 2004, pet. filed); but see Eisen v. Bartlett, 822
S.W.2d 335, 337 (Tex. App.—Houston [1st Dist.] 1992, no writ) (although it agreed
defendant was negligent, court held jury’s finding was not against the great weight
and preponderance of the evidence because the only evidence that defendant struck
plaintiff’s car was plaintiff’s own testimony, which the jury could disbelieve). Such
conduct is a departure from the standard of care of a reasonably prudent driver. We
conclude that the jury’s failure to find Barhorst’s negligence a proximate cause of
Chumley’s injuries is against the great weight of the evidence. See, e.g., Moore v.
State Farm Mut. Auto. Ins. Co., 792 S.W.2d 818, 820 (Tex. App.—Houston [1st
Dist.] 1990, no writ) (noting that there was no evidence of any other cause of the
accident, court held the jury’s finding of no negligence was against the great weight
and preponderance of the evidence). Therefore, we sustain Chumley’s second issue. 
Due to our disposition of issue two, we do not reach Chumley’s remaining issues.



CONCLUSION
          We reverse the judgment of the trial court and remand the cause for further
proceedings. 
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.