Shelley S. HIPP, Appellant,

v.

J.D. LOWRIE WELL SERVICE, INC. and Elbert Lee Rives, Jr., Appellees.

No. 13-90-085-CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 6, 1990.

Rehearing Overruled Jan. 10, 1991.

Lynn C. Grebe, Bay City, for appellant.

Robert L. LeBoeuf, LeBoeuf & Wittenmyer, Angleton, for appellees.

Before BENAVIDES, KENNEDY and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

Appellant, Shelley S. Hipp, sued J.D. Lowrie Well Service and Elbert Lee Rives, Jr., for damages allegedly resulting from Rives' negligence. During his employment for J.D. Lowrie Well Service, Inc., Rives drove his truck into the rear end of Hipp's car. Although the jury found that Rives' negligence proximately caused the accident, it assessed no damages. By six points of error, Hipp urges that the trial court erred in refusing to grant her a new trial. We affirm the trial court's judgment.

Points one through five challenge the jury's answers to the damage issues. The instructions for Questions 1–3 stated, "Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by the injuries that resulted from the occurrence in question." Question No. 3 inquired what sum of money would compensate Hipp for the injuries which "resulted from the occurrence," listing these elements of damages: physical pain in the past; physical pain which, in reasonable probability, she will suffer in the future; mental anguish in the past; mental anguish which, in reasonable probability, she will suffer in the future; physical impairment in the past; and physical impairment which, in reasonable probability, she will suffer in the future. Question No. 4 asked the reasonable expenses, if any, for necessary medical, hospital, chiropractic, physical therapy, medicines or other health care or services Hipp received in the past for treatment of her injuries "resulting from the occurrence," and Question No. 5 asked the future expenses of health care for treatment of her injuries "resulting from the occurrence." The jury answered zero to all the damage inquiries.

Appellant alleges that the zero damage findings are contrary to the overwhelming weight and preponderance of the evidence so as to be manifestly unjust and unfair and that no evidence or insufficient evidence exists to support the jury's answer.

■ Since Hipp attacks the legal sufficiency of the evidence to support adverse findings on issues on which she had the burden of proof, we must treat her legal sufficiency contentions as if she were asserting that she had established her position as a matter of law. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). A party attempting to overcome an adverse fact finding as a matter of law must surmount two hurdles. First, we examine the record for evidence supporting the finding, while ignoring all evidence to the contrary. Second, if no evidence supports the factfinder's answer, we examine the entire record to see if the contrary proposition is established as a matter of law. *Sterner*, 767 S.W.2d at 690; *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982).

Since Hipp also challenges the factual sufficiency of the evidence to support the findings, we examine the record to see if some evidence supports the finding and, if so, whether the finding is either so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust or that the great preponderance of the evidence supports the opposite conclusion. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *see Ames v. Ames,* 776 S.W.2d 154, 158 (Tex.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646, 651 (Tex.1988). We may not reverse even if we conclude that the evidence preponderates toward a finding, but only if a detailing of the evidence shows that the *great* weight of the evidence supports an affirmative finding. *Herbert,* 754 S.W.2d at 144; *see Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

Hipp's position was that she was entitled to damages because it was undisputed that following this collision, she had surgery to repair a broken bone fusion. She also maintains that it was unrefuted that she suffered *some* injury as a result of the collision, and was thus entitled to an award.

Rives' truck struck Hipp's car from behind on February 10, 1988. According to Hipp, the impact knocked her car forward six to eight feet. She testified that, at her suggestion, she and Rives moved the vehicles to her apartment, half a block away, and called the police. She and Rives waited for police outside, she told them she believed she was okay and declined to go to the emergency room; only afterward did she lie down. She testified that she called Dr. Chaput on February 11, and then filled prescriptions he called in for her. She had a cat scan and myelogram in May, and had surgery in August. It was the sixth spinal surgery that Dr. Chaput had performed on Hipp.

When asked about the damage to Hipp's car, Rives testified that a rubber molding on the bumper of her car was sticking out, and he popped it back into place by pressing it with his hand. He testified there was no other damage to her car, and that on his truck, the only damage was that the front fender was bent back and made a crease, damaging the paint. He testified it did not need to be repaired and he thought many people would not have seen it.

Richard Bernicker, an accident reconstruction expert, testified that he had reviewed Hipp's and Rives' depositions and the police report. His understanding from Hipp's deposition was that there was "no structural damage, no defamation of the bumper. Some damage to a rubber insert which I understand was re-inserted back in." He concluded from the damage that the impact was at approximately five miles per hour. He testified that the full impact is not transmitted to the driver or occupant of the vehicle, but that the force is reduced as it travels away from the point of impact. He affirmed that an impact of five miles an hour would not throw anyone violently around the inside of a car.

Dr. Chaput testified that Hipp had had several back surgeries before the collision. In 1983, he performed three surgeries, ending with a bone fusion. Hipp continued as a regular patient. She had a motor vehicle accident in March, 1986, and he performed neck surgery in 1986. She was still a patient at the time of the collision. In 1987, he wrote a letter stating, "This woman has had so many injuries to her lumbar and cervical spines that she is intolerant of any form of physical activity except the very most sedentary." Also, before the collision in question he declared her permanently disabled and limited in overhead work, lifting, stooping, carrying, and other activities.

Dr. Chaput found no record of prescribing medication for Hipp between February 10 and 17 of 1988. In May, 1988, he did a cat scan and determined that the old bone fusion had been traumatically displaced. Ultimately surgery was performed on August 10, 1988.

Dr. Chaput agreed that "usually" it took a substantial force to fracture the lamina of a person's vertebra. He agreed that in a rear-end collision, the neck is generally more subject to injury than the low back.

Dr. Barrash, another neurosurgeon who had reviewed Hipp's records, testified that a successful fusion is very difficult to break and is sometimes stronger than normal bone. He testified that a five-mile-per-hour impact would not be enough to break a successful fusion. He testified that "there is no graphic evidence that she ever had a fusion before. You can see where a surgical attempt was made to do a fusion. I read records in 1983 where she said she had a fusion, but there is no fusion. That bone was never fused."

■ Hipp's medical records showed that she suffered from back injuries before collision, had had numerous surgeries, and was still under care for her back. The jury apparently concluded that any injuries from which Hipp suffered after the collision with Rives preexisted that collision and were not caused by it. Since our review of the evidence reveals evidence to support the jury's finding, Hipp has failed to surmount the first hurdle of the test in *Sterner.* Accordingly, Hipp's legal sufficiency challenges are overruled.

Hipp argues that a jury *must* award some damages, citing, among other authorities, *Porter v. General Tel. Co.,* 736 S.W.2d 204, 205 (Tex.App.—Corpus Christi 1987, no writ); *Crowe v. Gulf Packing Co.,* 716 S.W.2d 623, 625 (Tex.App.—Corpus Christi 1986, no writ); and *Del Carmen Alarcon v. Circe,* 704 S.W.2d 520, 521 (Tex. App.—Corpus Christi 1986, no writ). These cases contain the presumption that pain accompanies physical manifestations of injury. We point out that in those cases, there was either undisputed evidence or a finding that the occurrence being litigated caused some injury. In *Porter,* it was undisputed that the appellant had suffered a laceration. In *Crowe* and in *Del Carmen Alarcon,* the jury made awards for medical bills but not for pain or mental anguish. Thus, the verdict was inconsistent. *See Del Carmen Alarcon,* 704 S.W.2d at 521.

Hipp argues that *Carrico v. Busby,* 325 S.W.2d 413 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.), mandates a judgment in her favor. In *Carrico,* the plaintiff was rear-ended and the impact was slight, and the evidence of the plaintiff's pain, lost earnings, and medical expense were uncontroverted. The appellate court, however, noted that nothing in the record indicated that the plaintiff had ever sustained injuries in any other accident or at any other time. *Carrico,* 325 S.W.2d at 418. Thus, we distinguish that case. Part of Hipp's burden was to establish a causal relationship between the occurrence and the damages she sought. *See Russell v. Hankerson,* 771 S.W.2d 650, 652 n. 1 (Tex.App.—Corpus Christi 1989, writ denied); *Blount v. Earhart,* 657 S.W.2d 898, 902 (Tex.App.—Tyler 1983, no writ). Hipp apparently did not persuade the jury that any injury she suffered resulted from the collision with Rives.

As noted above, the issue in the case was causation of Hipp's medical problems. Evidence that this incident caused them comes from Hipp's claims, from Drs. Chaput and Cowart, who relied on what she told them, and from documents generated from their information. Hipp testified that she had pain that day, that it finally became so strong that she went to the emergency room, and that the medical procedures that followed were necessitated by the collision. She testified that she liked to do numerous activities before the collision which she could not do afterward.

On the other hand, Hipp testified that she suggested moving the vehicles and that she initially declined to go to the emergency room. Hipp's account of getting prescriptions was not substantiated in Dr. Chaput's records. The evidence of Hipp's condition a week after the collision does not prove that the collision caused the condition, since other evidence suggested that she had had severe back problems for many years. On cross-examination, Hipp said that her children carried her laundry baskets after the collision, then admitted they had carried them before the collision also. When asked if she could sweep, mop,

vacuum, and so forth, before the collision, she said, "I did occasionally."

The jury could believe or disbelieve testimony of any witness. There was evidence from which the jury could conclude that the collision did not contribute to Hipp's condition. The jury's findings are not so contrary to the great weight and preponderance of the evidence that they are clearly wrong. We overrule points one through five.

By point six, Hipp challenges the admission of Defendants' Exhibits Nos. 20, 28, 31, 32, and 33. She maintains that these documents were irrelevant and prejudicial, containing information about her other medical problems unrelated to the collision. Exhibit 20 is an x-ray. Exhibits 28, 31, 32, and 33 are records of DeTar, Angleton Danbury, Brazosport Memorial, and Methodist Hospitals.

When Defendants' Exhibit 20 was offered, Hipp's attorney stated, "No objection." Thus, Hipp waived any error. *See Hernandez v. Bexar County Nat'l Bank,* 710 S.W.2d 684, 687 (Tex.App.—Corpus Christi 1986) *writ ref'd n.r.e.,* 716 S.W.2d 938 (Tex.1986).

When Defendants' Exhibits 28–33 were offered, the attorney objected on the grounds that the records contained irrelevant and prejudicial material. Specifically, he mentioned records of Hipp's fractured jaw, hysterectomy, and other unrelated operations. The trial court admitted the records subject to "housekeeping." Thus, the trial court indicated a willingness to have irrelevant material deleted, but the record does not show that appellant ever attempted to delete any particular portions. It was appellant's burden to segregate the inadmissible material. Nothing in the record shows that appellant attempted to do so or was denied any requested relief. We overrule point six.

We AFFIRM the trial court's judgment.