Carolyn Machalec BARNES, Appellant,

v.

The STATE BAR OF TEXAS, Appellee.

No. 13–92–396–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 13, 1994.

Opinion Granting Rehearing in Part and Otherwise Denying Rehearing Nov. 3, 1994.

Carolyn Machalec Barnes, pro se.

James M. McCormack, Gen. Counsel, Dawn Miller and Linda Acevedo, Asst. Gen. Counsels, Austin, for appellee.

Before SEERDEN, C.J., and DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

Carolyn Machalec Barnes, a licensed Texas attorney, appeals from a disciplinary suit brought against her by the State Bar of Texas. Barnes raises four points of error, and the State Bar raises two cross points. We reverse the trial court's judgment and render judgment in favor of appellant.

Since Barnes' points of error concern her conduct in two specific lawsuits, we first discuss the relevant facts of each suit.

### The Turley Suit

Barnes practiced law in Victoria. Toni Turley retained Barnes to collect approximately $3,000 in past-due child support which was allegedly owed by her ex-husband, Robert Turley, and to file a motion to increase child support. Barnes, on behalf of Toni Turley, filed a petition against Robert Turley to register a foreign support order and several motions.

Robert Turley retained Lynn Knaupp, an attorney practicing in Victoria, to represent him in the case. Knaupp filed an answer and a "Motion to Modify and Motion for Enforcement of Prior Order."[1] The Turleys' motions were set for hearing on May 22, 1986.

Knaupp testified that, in order to determine how much child support Robert should pay Toni, she and Barnes agreed to exchange their clients' W–2 forms. On April 29, 1986, Knaupp sent a letter to Barnes, enclosing Robert's W–2 forms and requesting copies of Toni's W–2 forms. Knaupp waited until May 13, 1986 for Toni's W–2 forms. When the W–2 forms did not arrive, Knaupp served Barnes with a notice to take Toni's deposition and a subpoena duces tecum.[2] Since the case was scheduled to be heard on May 22nd, Knaupp scheduled the deposition for May 19th. Knaupp testified that she did not have time to send out interrogatories or requests for production because of the May 22nd hearing date. It seemed to her that the fastest way to learn how much money Toni made was to depose her and subpoena the records. Knaupp testified that Barnes called her and was very upset because the deposition was going to interrupt her vacation plans. Knaupp offered to cancel the deposition if Barnes produced Toni's W–2 forms and bank statements before the deposition date. Barnes responded that she could not get these items and that she did not know about the May 22nd hearing.

In response to the deposition notice and subpoena duces tecum, Barnes filed a motion for protective order.[3] Upon hearing the motion on May 19, 1986, the trial court 1) reset the deposition to May 20th, 2) reset the May 22nd hearing to May 29th, and 3) ordered the documents produced. After the hearing, Barnes informed Knaupp that she was not going to produce the documents and that she was going to file suit.

On May 19, 1986, Barnes filed suit against Knaupp and Robert Turley. The suit, styled "Toni U. Turley & C.S. Machalec Barnes v. Robert L. Turley & Lynn Knaupp," alleged, in part, that Robert's motion to modify and motion to enforce were "filed with an illegal and improper motive which was not warranted or authorized." Barnes also alleged that [Knaupp] "proceeded to coerce [Barnes] with threats of Contempt and Sanctions if [Barnes] did not give in to [Knaupp's] demands or appear at the scheduled deposition" and that Knaupp "refused to reschedule

1. Robert Turley alleged in his "Motion for Enforcement of Prior Order" that the divorce decree, in part, ordered Toni to pay one-half of the costs of transporting their child for custodial-visitation purposes. Robert also alleged that the child had made at least eight court-ordered visits to his home in Tulsa, Oklahoma from her home in Victoria, Texas and that Toni had not paid him any money as her share of the travel expenses incurred in these visits. Robert alleged that Toni owed him $1,800 for these expenses. Robert asked the court to award him the attorney's fees which he had expended to enforce this portion of the divorce decree.

   Robert alleged in his "Motion to Modify," that he had moved from Tulsa to Austin, Texas and now lived closer to his child's Victoria residence. He sought, in part, more frequent access or possession of the child.

2. The subpoena asked Toni to produce: (1) all bank statements, deposit slips, and canceled checks on any checking, savings, or other financial accounts held in Toni's name or upon which she had the authority to sign and (2) all federal income tax returns and supporting work papers filed by Toni for the tax years 1983–1985.

3. In her motion for protective order, Barnes alleged that, on May 12, 1986, she was served with a notice of deposition and subpoena duces tecum which required Toni Turley to give testimony and to produce documents and other things. Barnes asked the trial court to prohibit Knaupp from taking Toni's deposition because it was scheduled when Barnes would be out of state and because it was scheduled for the purpose of oppressing and harassing Toni. Barnes sought the trial court's protection because the subpoena duces tecum ordered Toni to produce documents which were beyond the scope of discovery permitted by Tex.R.Civ.P. 186a and were irrelevant. Barnes also alleged that the cost of producing the documents imposed an undue burden and expense on Toni.

the deposition unless [Barnes] would agree to [Knaupp's] exorbitant demands which would have prejudiced [Barnes'] client." Barnes sought actual and exemplary damages and attorney's fees. Due to Barnes' initiation of the Turley suit, Knaupp filed a complaint against her with the State Bar Grievance Committee.

### The Lemons Suit

Edwards, Parker, & Brown, Inc., d/b/a South Texas Office Products (South Texas), retained Barnes to file suit against the John Lemons Company, Inc. (Lemons). South Texas alleged that Lemons had sold it defective venetian blinds. John Griffin, an attorney practicing in Victoria, represented Lemons in the suit. Griffin testified that, on August 25, 1986, he noticed South Texas's president for a deposition to take place on October 10, 1986. However, on September 9, 1986, Barnes obtained a trial setting three days after the day Griffin was scheduled to take the deposition. Griffin, realizing that he needed more time between the deposition date and the trial date, filed a motion for continuance. Barnes opposed the motion, and the trial court denied it. Griffin subsequently amended the motion, and the trial court granted him a continuance to file a third-party suit against the supplier of the venetian blinds. On November 25, 1986, Lemons filed a "Third–Party Action"[4] against the supplier of the blinds, Mark Window Products.

4. Lemons alleged that Mark Window Products represented "that it would ship wooden vertical blinds and head rails and/or tracks" and that the blinds would arrive in good working order, merchantable, ready for installation, excellent quality, and satisfaction guaranteed. Lemons alleged that as a result of these representations, it ordered wooden vertical blinds with head rails and tracks from Mark Window Products. Lemons alleged that the representations were false, misleading, and deceptive because the wooden vertical blinds were damaged, warped, and not of good and workmanlike quality.

5. Special Question 6 asked the jury:

Did the Respondent, Carolyn Machalec Barnes, in representation of her client, Toni Turley, knowingly file the Turley lawsuit?

On August 21, 1987, Barnes filed a Fifth Amended Petition in the Lemons suit. In the petition, Barnes added Griffin as a party defendant. Barnes alleged that Griffin acted without probable cause when he initiated the third-party suit because he did not honestly, reasonably, and in good faith believe that Mark Window Products was guilty of the alleged acts and practices. Barnes further alleged that Griffin acted maliciously because he initiated the third-party suit to receive insurance funds and to harass South Texas and increase its expenses, costs, and attorneys' fees. The suit prompted Griffin to file a complaint against Barnes with the State Bar of Texas.

### The Disciplinary Suit

The State Bar alleged in the disciplinary suit that while Carolyn Machalec Barnes represented Toni Turley in the Turley suit, Barnes filed a separate suit on behalf of herself and Toni Turley against Robert Turley and his attorney, Lynn Knaupp. In addition, the State Bar alleged that while Barnes represented Edwards, Parker, & Brown, Inc., d/b/a South Texas Office Products in the Lemons suit, she filed an amended petition which initiated suit against the defendant's attorney, John Griffin.

The disciplinary suit was tried to a jury which found that Barnes knowingly filed the Turley and Lemons suits.[5] The trial court found that Barnes' acts and conduct constituted two separate violations of Disciplinary Rule 7–102(A)(2).[6] The trial court's judgment provides, in part, as follows:

Special Question 18 asked the jury:
Did the Respondent, Carolyn Machalec Barnes, in representation of her client, Edwards, Parker & Brown, Inc., d/b/a South Texas Office Products, knowingly file Plaintiffs' Fifth Amended Petition in the Lemons Lawsuit?
The jury answered "Yes" to both questions.

6. DR 7–102. Representing a Client Within the Bounds of the Law
(A) In his representation of a client, a lawyer shall not:
(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.
SUPREME COURT OF TEXAS, CODE OF PROFESSIONAL RESPONSIBILITY, DR 7–102(A)(2) (1984).

The Court, based upon the jury's verdict and the law applicable thereto, is of the opinion and so finds that the acts and conduct on the part of the Respondent, as found by the jury in answer to Question Nos. 6 and 18, constitute two (2) separate violations of Disciplinary Rule 7–102(A)(2) of the Code of Professional Responsibility. As to each such act of misconduct, the Court finds that the appropriate discipline is suspension from the practice of law for a period of one (1) year with the last six (6) months of such suspension to be probated, said two (2) one (1) year periods of suspension to run concurrently.

The judgment further required that Barnes seek and obtain psychological counseling and that she be supervised and counseled by a lawyer in good standing during the term of her probation.

### *Barnes' Points of Error*

By her first point of error, Barnes complains that the jury's answers to Special Questions 6 and 18 do not support the judgment against her under Disciplinary Rule 7–102(A)(2). Barnes contends that she was entitled to have the jury determine whether she knowingly violated DR 7–102(A)(2) when she filed the Turley and Lemons suits; *i.e.,* whether she "knowingly advance[d] a claim

... that is unwarranted under existing law" and whether the claim "can be supported by a good faith argument for an extension, modification, or reversal of existing law." Barnes contends that the State Bar did not ask the trial court to submit the essential and controlling elements of DR 7–102(A)(2) to the jury. Therefore, it waived recovery under DR 7–102(A)(2).

■ We must first consider whether Barnes properly preserved her complaints for appellate review. The State Bar argues that Barnes's objection to Special Question Nos. 6 and 18 recited language from DR 7–102(A)(1),[7] not DR 7–102(A)(2), and that her objection was "neither specific nor does it give any explanation as to the objection."[8] The State Bar contends that, in order to preserve error, Barnes was required to distinctly point out the matter to which she was objecting and to explain the ground or reason why the matter was erroneous, citing *Castleberry v. Branscum,* 721 S.W.2d 270, 276–77 (Tex.1986).

■ In deciding whether a party has preserved error in the jury charge, we need determine only whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. *State Dept. of Highways v. Payne,* 838 S.W.2d 235, 241 (Tex.1992); *Morris v. Holt,* 714 S.W.2d 311,

---

7. DR 7–102. Representing a Client Within the Bounds of the Law

  (A) In his representation of a client, a lawyer shall not:
  (1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.
  SUPREME COURT OF TEXAS, CODE OF PROFESSIONAL RESPONSIBILITY, DR 7–102(A)(1) (1984).

8. During the charge conference, Barnes's counsel made the following objections to Special Question Nos. 6 and 18:

  Counsel: Question Nos. 4, 5, and 6 are improperly stated, or improperly separated and should be consolidated as my number six— may I approach, Your Honor?
  Court: Yes. Make sure you give those back to me to make it part of the record.
  Counsel: I will. As number six, it says, "Do you find from the preponderance of the evidence that in the Turley lawsuit, Carolyn Machalec Barnes knowingly filed a lawsuit—

knowingly filed a suit, asserted a position, conducted a defense, delayed a trial, or took other action on behalf of her client when she knew or it was obvious that such action would serve merely to harass or maliciously injure another?" That is a broad submission and tracks specifically that particular D.R. in question.
  And so, those objections apply to four, five and six.
  Court: Oh, okay. Your objection is overruled.
  \*  \*  \*  \*  \*  \*
  Counsel: No. 16. Again, No. 16, 17, and 18, there is no evidence for any of those issues, and it should be submitted—tracking the D.R.s, the particular D.R. that they cover, that should be submitted in a conglomerate form. It should be submitted broadly and that should read, "Do you find from the preponderance of the evidence that in the Lemons lawsuit, Carolyn Machalec Barnes knowingly filed a suit, asserted a position, conducted a defense, delayed a trial, or took other action on behalf of her client when she knew or when it was obvious that such action would serve merely to harass or maliciously injure another."
  The trial court overruled this objection as well.

312 (Tex.1986). TEX.R.CIV.P. 279 permits a party in Barnes' position to preserve error regarding the trial court's failure to submit an issue by making a timely, specific objection or by requesting submission of the issue in substantially correct form. *Payne,* 838 S.W.2d at 239–241; *Morris,* 714 S.W.2d at 312.

Barnes requested that the trial court include the following questions in the charge:

Do you find from the preponderance of the evidence that in THE TURLEY LAWSUIT, Carolyn Machalec Barnes, knowingly advanced a claim or defense that is unwarranted under existing law, except that she may advance such claim or defense *if it can be supported by good faith argument for an extension, modification, or reversal of existing law?*

[Instructions omitted]

Do you find from the preponderance of the evidence that in THE LEMONS LAWSUIT, Carolyn Machalec Barnes, knowingly advanced a claim or defense that is unwarranted under existing law, except that she may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law?

[Instructions omitted]

The trial court refused to include Barnes' questions in the charge to the jury. Even if Barnes' objections during the charge conference were insufficient, as the State Bar contends, Barnes preserved error 1) by asking the trial court to submit the DR 7–102(A)(2) special questions to the jury and 2) by obtaining a ruling from the trial court. *Payne,* 838 S.W.2d at 239.

■ We now turn to the merits of appellant's first point of error. We believe that the term "knowingly," as used in DR 7–102(A)(2), applies to *all* of the conduct expressed therein. Thus, the necessary elements of a cause of action under DR 7–102(A)(2) are:

1) In representing a client,

2) an attorney knowingly advanced a claim or defense,

3) knowing that the claim or defense was unwarranted under existing law, and

4) knowing that the claim or defense could not be supported by a good-faith argument for an extension, modification, or reversal of existing law.

Thus, the issues in this case were whether Carolyn Machalec Barnes advanced the Turley and Lemons suits knowing that they were unwarranted under existing law and whether she advanced these lawsuits knowing that they were not supported by a good-faith argument for an extension, modification, or reversal of existing law.

■ The State Bar argues that the latter two elements under DR 7–102(A)(2) are matters of law to be decided by the judge and not by the jury as questions of fact. We disagree. Whether the claim or defense was unwarranted under existing law is a question of law, as is whether the claim could be supported by a good-faith argument for a modification or reversal of existing law. However, the disciplinary rule also expressly requires a culpable mental state on the part of the actor: 1) knowledge that the claim is unwarranted under existing law and 2) knowledge that a good faith argument for a modification or reversal of the law cannot be made. The knowledge of the actor is a question of fact. Inquiries into the mind to ascertain mental states of intent or knowledge are uniquely within the realm of the jury.

To merit discipline under DR 7–102(A)(2), the State Bar was required to obtain an affirmative finding by the jury on each element of its claim. It failed to do so although the deficiency was pointed out by appellant by both objection and tendered questions. These elements and any accompanying instructions or definitions were not submitted to the jury, and a finding on these elements cannot be deemed in the State Bar's favor because Barnes objected to the omission by requesting appropriate special questions on these issues. TEX.R.CIV.P. 279; *Payne,* 838 S.W.2d at 239; *Morris,* 714 S.W.2d at 312–13. We hold that the verdict does not support a judgment against Barnes on these grounds.

■ After reviewing the entire record, we also hold that the evidence fails to conclusively establish, as a matter of law, that Barnes

advanced the Turley and Lemons suits knowing that they were clearly unwarranted under existing law and knowing that a good-faith argument did not exist to support an extension, modification, or reversal of existing law. We sustain appellant's first point of error.

### State Bar's Cross Points of Error

■ By its first cross point of error, the State Bar argues that the evidence proved conclusively, as a matter of law, that Barnes had a proprietary interest in the Turley suit and that the jury's answer to Special Question No. 3 [9] was wrong.

When a party with the burden of proof complains on appeal from an adverse jury finding, the appropriate points of error are "that the matter was established as a matter of law" or "that the jury's finding was against the great weight and preponderance of the evidence." *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983).

■ When we review a legal sufficiency or "that the matter was established as a matter of law" point, we examine the record for evidence supporting the finding of fact and ignore all evidence to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990, writ denied). If we find that no evidence supports the finding, we must determine from the record whether the contrary proposition is established as a matter of law. *Sterner*, 767 S.W.2d at 690; *Hickey*, 797 S.W.2d at 109.

■ When we review a factual sufficiency or "that the jury's finding was against the great weight and preponderance of the evidence" point, we examine the entire record. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Hickey*, 797 S.W.2d at 110. We set aside the verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifest-

ly unjust. *Cain*, 709 S.W.2d at 176; *Hickey*, 797 S.W.2d at 110.

Disciplinary Rule 5–103 provides:

(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:

(1) Acquire a lien granted by law to secure his fee or expenses.

(2) Contract with a client for a reasonable contingent fee in a civil case.

SUPREME COURT OF TEXAS, CODE OF PROFESSIONAL RESPONSIBILITY, DR 5–103 (1984).

The trial court did not submit a definition of "proprietary interest" to the jury. In *State v. Baker*,[10] the Austin Court of Appeals stated:

Disciplinary Rule 5–103 is a preventive rule which does not require a showing of actual harm to a client. Instead, it prohibits attorneys from acquiring proprietary interests in the subject matter of litigation in order to avoid the possibility of adverse influence upon the attorney and harm to the client.

*Baker*, 539 S.W.2d at 373. According to the American Bar Association's Commission on Professional Ethics:

Acquisition by a lawyer of a proprietary interest in a cause of action he [or she] is conducting for a client is expressly prohibited by DR 5–103(A), because if an attorney acquires an interest in the outcome of a suit in addition to his fees, it can lead to the attorney placing his own recovery ahead of his client. For example, he might urge a settlement which would be to his best interest but not to the best interest of the client.

ABA Comm. on Professional Ethics, Formal Op. 288 (1967).

According to commentators Geoffrey Hazard and William Hodes, DR 5–103(A) prohibits champerty, except for a security interest allowed by law to secure payment of the lawyer's fee or a contractual interest in the

---

**9.** Special Question No. 3 asked the jury:
Did the Respondent, Carolyn Machalec Barnes, have a proprietary interest in the Turley lawsuit?

The jury answered "No" to this question.

**10.** 539 S.W.2d 367 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.).

form of a contingent fee. At common law, champerty consisted of "investing" in a person's cause of action by buying a certain percentage of the hoped-for recovery; in effect, discounting the person's cause of action. GEOFFREY HAZARD & WILLIAM HODES, THE LAW OF LAWYERING: A HANDBOOK ON THE MODEL RULES OF PROFESSIONAL CONDUCT §§ 1.8:601–602, 1.8:1000–1101 (2nd ed. Supp. 1992).

The jury found that Carolyn Machalec Barnes did not have a proprietary interest in the Turley lawsuit. After reviewing all of the evidence, we conclude that the Turley suit consisted of two separate and independent lawsuits; *i.e.,* 1) Toni Turley's suit against Robert Turley and Lynn Knaupp and 2) Carolyn Barnes's suit against the same defendants. Barnes and Toni Turley could have filed and tried their suits separately or jointly. By filing her suit jointly with Toni Turley's suit, Barnes did not buy a certain percentage of Toni's hoped-for recovery in the Turley suit.

We hold that the evidence is legally and factually sufficient to support the jury's finding. We overrule the State Bar's first cross point of error.

By its second cross point of error, the State Bar contends that the evidence proves conclusively, as a matter of law, that Carolyn Machalec Barnes did not obtain Toni Turley's consent after full disclosure before filing the Turley suit, and the jury's answer to Special Question 7a [11] was wrong.

Disciplinary Rule 5–101(A) provides as follows:

(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

SUPREME COURT OF TEXAS, CODE OF PROFESSIONAL RESPONSIBILITY, DR 5–101(A) (1984). DR5–101(A) focuses on the propriety of the attorney-client relationship itself, and re-

quires full disclosure and the client's consent if the attorney's professional judgment concerning the subject matter of the employment relationship "will be or reasonably may be affected by his own financial, business, property, or personal interests." DR 5–101(A); *Matter of Silverman,* 113 N.J. 193, 549 A.2d 1225, 1240–41 (1988). One court of appeals has defined Rule 5–101(A) "full disclosure" as follows:

"Full disclosure" includes a clear explanation of the differing interests involved in the transaction and the advantages of seeking independent legal advice. It also requires a detailed explanation of the risks and disadvantages to the client entailed in the agreement, including any liabilities that will or may foreseeably accrue to him....

*Matter of James,* 452 A.2d 163, 167 (D.C.Cir. 1982). We believe that DR 5–101(A) requires a factual determination. Thus, it must be made by the jury.

We have reviewed all of the evidence. The record reveals that during the trial, the State Bar's counsel examined Barnes as follows:

Counsel: You told Toni Turley, after her deposition was taken, that you were going to sue to get your vacation expenses back, didn't you?

Barnes: I do not recall that at all.

Counsel: You didn't ask her permission before you filed that lawsuit, did you?

Barnes: Yes, we discussed in the details— as a matter of fact, she was the one that brought it up to begin with because it was increasing her attorney's fees and she was right—

The State Bar's counsel then objected to Barnes's answer. The trial court overruled the objection and Barnes continued with her testimony.

Barnes: She was the one that says, "Isn't there anything we can do? We've told them I can't afford this. We don't have the money," because it was—it was increasing her attorney's fees. That was

---

**11.** Special Question 7a asked the jury:
Prior to filing the Turley lawsuit on behalf of Toni Turley, did the Respondent, Carolyn Machalec Barnes, fail to obtain the consent of her client after full disclosure?
The jury answered "No" to this question.

the whole purpose of what Lynn [Knaupp] was doing. That firm does—if they know your client doesn't have money, they will coerce you—

The State Bar's counsel objected to this testimony on the basis that it was non-responsive. The trial court sustained the objection, but did not strike the testimony. The State Bar's counsel then continued with her examination.

\* \* \* \* \* \*

Counsel: You never discussed with Toni Turley, prior to filing the lawsuit against Lynn Knaupp, the fact that by filing a lawsuit you were making yourself a witness in the case, didn't you?

Barnes: I was not—we did not discuss that and I was not making myself a witness in the case.

\* \* \* \* \* \*

Counsel: You never discussed with Toni Turley the notion that you would create a conflict of interest between her and you by filing a lawsuit where you were a party with her, did you?

Barnes: There was never a conflict of interest.

Trial counsel objected to Barnes' answer on the basis that it was non-responsive. The court reporter read back the question, and Barnes answered "no" to the question. The State Bar's counsel then continued her examination.

Counsel: In fact, you never even discussed the concept of conflict of interest with her, did you?

Barnes: I don't remember if we ever discussed that or not.

During the trial, the State Bar's counsel asked Toni Turley if she and Barnes had a discussion regarding Barnes's vacation. Turley answered yes. Turley testified that "She [Barnes] was going to pursue some kind of reimbursement for expenses because she had to come back early from her—because her vacation was disrupted, and I guess she had to make extra arrangements to come back." The State Bar also asked Toni Turley:

1. Whether Barnes had asked Turley's permission to sue for those expenses;

2. Whether Barnes had explained to Turley that by suing in her name Barnes would make herself a witness in the case;

3. Whether Barnes had explained to Turley that by filing a lawsuit in her [Barnes'] name and Turley's name that Barnes was creating a potential conflict of interest between Turley and her as Turley's attorney;

4. Whether Barnes had discussed with Turley the concept of conflict of interest; and

5. Whether Turley understood there was anything that Barnes was suing on Turley's behalf in a lawsuit in which Barnes was the party against Turley's ex-husband and Lynn Knaupp.

Turley answered "No" to all of these questions.

The jury may believe or disbelieve any or all of the testimony of any witness. *Hipp v. J.D. Lowrie Well Serv., Inc.*, 800 S.W.2d 668, 672 (Tex.App.—Corpus Christi 1990, writ denied). The jury in this case was presented with conflicting evidence. The jury reconciled the conflict and found that Barnes, after full disclosure, obtained Toni Turley's consent before filing the Turley suit.

After applying the same standard of review that we previously applied to the State Bar's first cross point of error, we hold that the evidence is legally and factually sufficient to support the jury's finding. We overrule the State Bar's second cross point of error.

Due to our disposition of appellant's first point of error, we need not address her remaining points of error. TEX.R.APP.P. 90(a).

We REVERSE the trial court's judgment and RENDER judgment in favor of appellant.

## OPINION ON MOTION
## FOR REHEARING

We issued our original opinion in this case on October 13, 1994. The State Bar of Texas subsequently filed a motion for rehearing. By its sixth point of error, the State Bar contends in its motion for rehearing that this

court erred by citing TEX.R.DISCIPLINARY P. 6.06 in support of publication of the original opinion.

We agree with the State Bar. TEX.R.DISCIPLINARY P. 6.06 should not have been cited by this court in support of publication of the original opinion because this case was pending at the time that the Texas Rules of Disciplinary Procedure were implemented.

TEX.R.APP.P. 90, however, authorizes us to determine which opinions we believe warrant publication. We grant the State Bar's motion for rehearing as to this point only and order the original opinion published pursuant to TEX.R.APP.P. 90.

In all other respects, we deny the State Bar's motion for rehearing and confirm the opinion we issued on October 13, 1994.